RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; WALLACE CLEGG KEMPER, Intervener.

No. 220. Argued April 18, 1950.—Decided April 27, 1950.

*Vicente Géigel Polanco, Attorney General, (José C. Aponte, Acting Attorney General,* in the petition, and *José Trías Monje, Acting Attorney General,* on the brief) and *Elmer Toro Lucchetti, Assistant Attorney General,* for petitioner. *James R. Beverley* and *R. Castro Fernández* for intervener, complainant in the main action.

MR. JUSTICE SNYDER delivered the opinion of the Court.

Wallace Clegg Kemper made an income tax return for 1944. He claimed a personal exemption of $2,000 and $1,200 as a credit for three children as dependent persons. Alongside these items he made the notation, "⅓ of a year". He also attached to his return a statement reading as follows:

"Although I am a temporary visitor to the Island, and therefore a non-resident, non-citizen, I am calculating and paying an Income Tax. However, on advice of counsel, I make the payment at the rate specified for citizens or residents of Puerto Rico."

The Treasurer notified Kemper with a deficiency for $569.37 on the grounds that (1) as a non-resident he must pay his income tax for 1944 at the rate of 28 per cent (which in his case was higher than the normal tax and surtax if he were a resident); and that (2) as a non-resident he was not entitled to the personal exemption and credits for dependents provided by law for residents.

On October 29, 1945 Kemper moved for reconsideration, alleging that "although he is not a resident citizen of this Island of Puerto Rico, however he is an American citizen resident in Franklin, State of Louisiana." He also alleged that "he has been and is residing temporarily in Ensenada, Puerto Rico." His motion concluded by alleging that pursuant to *Fiddler* v. *Tax Court*, 65 P.R.R. 189, "the imposition of the 28 per cent rate provided by law for individual non-residents who are not citizens of Puerto Rico is null and unconstitutional to the extent that it discriminates between American citizens who are not residents of Puerto Rico and resident citizens of Puerto Rico."

The Treasurer denied the motion for reconsideration and Kemper filed a complaint in the Tax Court on January 26, 1948. In the latter he alleged that he was a citizen of and domiciled in Louisiana, residing in Ensenada, Puerto Rico. He attacked the deficiency on the following grounds:

"(c) Because the provisions of Sections 12(a) and 18(b, c, d and e) of the Income Tax Act in effect in 1944 are unconstitutional and null to the extent that they impose on American citizens not domiciled in Puerto Rico taxes at a higher rate and deny them the deduction granted to resident citizens. *Fiddler* v. *Tax Court*, 65 P.R.R. 189.

"(d) Because the Treasurer of Puerto Rico considered the appellant as a non-resident of this Island when in fact the taxpayer during the entire tax year 1944 resided in Ensenada, Puerto Rico."

The case was tried on the merits after the *Fiddler* case had been reversed. *Buscaglia, Treasurer* v. *Tax Court*, 68 P. R.R. 322. The plaintiff was not present and did not testify. The only witness presented on his behalf was James R. Beverley, who testified as follows:

"That in 1944, as well as in 1948, he was General Counsel and Vice-President of the South Porto Rico Sugar Company, and that he knows Wallace Clegg Kemper personally.

"That in 1943 Kemper lived in Franklin, State of Louisiana; that while he was working there, in a sugar mill, he executed a contract with the management of the South Porto Rico Sugar Company, pursuant to which he agreed to render services to the latter company in Puerto Rico, as a general employee; that he did not come here to perform the functions of any specific position.

"That Kemper left Louisiana for this Island in August or September of 1943, and remained in the town of Ensenada, Puerto Rico, *although not continuously*, until the end of 1945, when by virtue of a transfer or a new appointment, he was transferred to New York.

"That the positions of Kemper in the South Porto Rico Sugar Company were: first, Assistant to the Manager; and, shortly afterwards, Assistant to the President of the Corporation. That his work in this Island was for him, a rest.

"That Kemper was married and had three children, two of whom in 1944 attended the school in the said town of Ensenada; and that the third, his oldest child, was studying in a school in the United States." (Italics ours.)[1]

The Treasurer presented in evidence Kemper's return and motion for reconsideration, to which we have already referred. The Tax Court entered an order in favor of the taxpayer. We granted the petition of the Treasurer to review this de-

---

[1] As the stenographer who took this testimony was unavailable to transcribe it, the testimony of Mr. Beverley was approved by the Tax Court in narrative form pursuant to § 10(f) of our Rules.

cision. The first assignment is that the Tax Court erred in refusing to decide the question of fact as to the residence of the taxpayer.

 After summarizing the testimony of Mr. Beverley and the statements in the return and motion for reconsideration noted above, the Tax Court made no findings of fact. On the contrary, it proceeded to hold that the uniform taxation and equal protection of the law clauses of the Organic Act, 48 U. S. C. § 737, prevent the Legislature from taxing persons *who are physically in Puerto Rico* differently from residents, based exclusively on their non-residence here. The opinion of the Tax Court concludes with the following two paragraphs:

"It is not necessary in the present case to determine if the complainant was, technically, a *non*-resident, pursuant to the definition of a 'non resident individual not a citizen of Puerto Rico' as it appears in Article 183 of Income Tax Regulations No. 1. Even if, in accordance with the evidence presented, we should hold that Wallace Clegg Kemper was, in 1944, a non-resident individual not a citizen of Puerto Rico, he would still have the right to the guarantees of our Organic Act provided for every person who is physically within the jurisdiction of the country.

"Consequently, due to the fact that, during 1944, the complainant was physically in Puerto Rico, he is entitled to the same rates and to the same deductions from his income provided by law for the determination of income taxes payable by resident citizens of Puerto Rico."

The constitutional question raised by the Tax Court is serious and substantial. *Cf. Buscaglia, Treasurer* v. *Tax Court, supra,* particularly footnote 7 at p. 335; *South Porto Rico Sugar Co.* v. *Buscaglia,* 154 F.(2) 96 (C.C.A. 1, 1946); *Buscaglia, Treas.* v. *Tax Court,* 69 P.R.R. 884; *Ballester* v. *Court of Tax Appeals,* 61 P.R.R. 460, 470 *et seq.* However, all courts wisely avoid constitutional questions wherever possible. *District of Columbia* v. *Little,* 339 U.S. 1; *Buscaglia* v. *Fiddler,* 157 F.(2) 579 (C.C.A. 1, 1946). The Tax Court is of course bound by this rule. In this case it violated the rule. It refused to find the facts as to the

residence of the taxpayer. Instead it passed on a hypothetical question of law which may or may not have been necessary to decide, depending on what facts it found. In this case before the Tax Court reached any question of law, particularly constitutional questions, it was its duty to determine as a question of fact whether or not Kemper was a resident of Puerto Rico within the meaning of the Income Tax Act. See *Buscaglia* v. *Fiddler, supra.* The Tax Court, instead of performing that duty, undertook to decide a constitutional question which as we have seen might have been unnecessary to decide. Until the Tax Court finds the facts in each case, it is idle, dangerous and wholly unnecessary for it and for us to speculate in a vacuum as the Tax Court did as to the alleged constitutional rights of all sorts of people who might earn income while "physically" in Puerto Rico.[2]

In a series of cases, culminating with *Santana* v. *García, ante,* p. 132, we have emphasized the necessity of findings of fact and conclusions of law pursuant to Rule 52(a) of the Rules of Civil Procedure in cases decided in the district courts. We stated in footnote 1 of the *Santana* case that in the future we shall set aside judgments in cases in which this requirement is not fulfilled.[3] That salutary rule applies with even more force in this case for two reasons. In the first place, we pass only on questions of law in reviewing decisions of the Tax Court. *Buscaglia* v. *Tax Court,*

[2] *Cf.* the situation of baseball players, members of visiting theatre companies, guest stars on radio programs, tourists who win money gambling here, etc.

[3] As we pointed out in *Meléndez* v. *Metro Taxicabs, Inc.,* 68 P.R.R. 709, 712: "Rule 52(a) contemplates a separate statement in a separate paragraph of each underlying and ultimate fact which the court finds, not a summary of the evidence adduced to establish these facts. This should, in turn, be followed by a separate statement in a separate paragraph of each conclusion of law. Finally, although it is not required by Rule 52(a), if the district court wishes to do so, it may at its option set forth in an opinion its reasoning showing how application of its conclusions of law to the facts it has found makes it necessary to enter a certain judgment. All this is familiar practice in the Federal courts under Federal Rule 52(a) which is substantially the same, for present purposes, as our Rule."

69 P.R.R. 792, and cases cited. That makes findings of fact by the Tax Court imperative. Secondly, constitutional questions lurking in the background may possibly disappear as a result of the findings of fact of the Tax Court.[4]

The order of the Tax Court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

Mr. Justice Negrón Fernández did not take part in the decision of this case.

---

[4] For example, at the oral argument, counsel for the Treasurer assured us that on remand by us in the *Fiddler* case, the Tax Court found Mr. Fiddler to be a resident within the meaning of the Act and that the Treasurer has not petitioned for review of this decision. See *Fiddler* v. *Tax Court*, 68 P.R.R. 784.